1

2

3

4

5

6

7                IN THE UNITED STATES DISTRICT COURT

8              FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10

11

STACEY ANNE DECROSTA,                Case No.: 10-cv-2886 JSC

12                                             **ORDER RE: PLAINTIFF'S MOTION**
            Plaintiff,                         **FOR SUMMARY JUDGMENT AND**
13                                             **DEFENDANT'S CROSS-MOTION**
        v.                                     **FOR SUMMARY JUDGMENT (Dkt.**
14                                             **Nos. 16, 20)**

15

MICHAEL J. ASTRUE, Commissioner
16   of Social Security,

17
            Defendant.
18

19
            Plaintiff Stacey Anne Decrosta brings this action pursuant to 42 U.S.C. § 405(g)

20   seeking judicial review of a final decision by Defendant Michael J. Astrue, the

21   Commissioner of the Social Security Administration, denying her disability benefits.

22   Pending before the Court are Plaintiff's Motion for Summary Judgment (Dkt. No. 16) and

23   Defendant's Cross-Motion for Summary Judgment (Dkt. No. 20).  For the reasons set forth

24   below, the Court DENIES Plaintiff's motion for summary judgment in part and withholds

25   judgment on Defendant's cross-motion for summary judgment pending Defendant's reply to

26   new argument raised by Plaintiff in Plaintiff's Reply and Opposition.[1] (Dkt. No. 23.)

27   _____

28   [1] The parties have consented to the jurisdiction of a United States magistrate judge pursuant to
     28 U.S.C. § 636(c).

**BACKGROUND**

**A.     Procedural History**

Plaintiff filed an application for supplementary security income payments under Title XVI of the Social Security Act on November 15, 2006.  Her application was initially denied by the Social Security Administration ("SSA").  Plaintiff appealed.  On June 11, 2009, Decrosta, represented by her attorney, appeared in Oakland, CA before ALJ Deidre Horton, who conducted the hearing via video from New Haven, CT.  Decrosta testified.  On July 20, 2009, the ALJ issued an unfavorable written decision denying Decrosta's application and finding that Decrosta was not disabled within the meaning of the Act and regulations.  On October 26, 2009, the Decision Review Board informed Decrosta that her case was not reviewed, thus exhausting her administrative remedies and finalizing the ALJ decision.

**B.     Relevant Factual Background**

Plaintiff Decrosta, born in 1973, is a high school graduate. See Administrative Record ("AR") 23.  Her longest employment was during high school, when she held a job for over a year. AR 23.  In the last 15 years, she reports working at several Dunkin' Donuts, cleaning houses, performing data entry, and waitressing. AR 22.  Decrosta has two children, neither of whom resides with her. AR 28.  In March of 2009, Decrosta reported being homeless and residing "with friends or in a tent." AR 413.  At the June 2009 hearing, however, she reported living with her boyfriend and his mother for the past four years. AR 20.

1.   Alleged Medical Conditions

Decrosta states that she has bipolar disorder, Hepatitis C, post-traumatic stress disorder ("PTSD"), back problems, personality disorder, headaches, and frequent panic attacks.  AR 134-35.  She also reported paranoia, obsessions, compulsions, ADHD, insomnia, hypersomnia, and "hearing voices." AR 413-14.  Decrosta also notes a "heart condition" (AR 26), diagnosed as endocarditis.  AR 267.  At her June 2009 hearing, Decrosta reported that she has "tried a lot of different medications" that "don't really help [her] at all" with her medical conditions.  AR 25.  On March 14, 2009, however, Decrosta specifically sought out medication prescriptions from Sausal Creek Clinic after she had been without all

psychological medication for four months due to a loss of insurance.  AR 403.  She reported three medications as "very helpful" in treating her conditions. AR 407.  Her Global Assessment of Functioning ("GAF") score was assessed at 39. AR 408.  In a follow-up appointment on March 23, 2009, an Alameda County Mental Health Crisis Evaluation reported Decrosta's GAF at 45. AR 414.

       2.  <u>Decrosta's Substance Abuse History</u>

The record is replete with medical evidence of Plaintiff's substance abuse. In 2006, Decrosta spent nearly a month at McDonough House Treatment Center. AR 221.  The "Discharge Summary" notes Decrosta's 16-year struggle with substance abuse, her "great leadership skills" as a house leader, and her history of bipolar disorder, anxiety, and ADHD. AR 221-223.  Her GAF was 31 at the time of admission into the program, at which time she reported daily drug use. AR 337.  At the time of discharge, her GAF was 37, and the discharge summary noted she was "drug free." AR 337-338.

Immediately after the birth of Decrosta's second child in early July 2007, treating physician Ann Lembke observed Decrosta "appear[ed] to be meeting criteria for a major depressive episode, although, it is unclear at this time whether this is in the context of bipolar disorder, major depressive disorder, or substance-induced mood disorder." AR 322. Decrosta's substance abuse history notes heroin dependence from the ages of 22 to 27 and monthly methamphetamine use with the last use two days prior.  AR 321.  Her GAF was reported as 50. AR 321.

In a follow-up appointment on August 15, 2007, Decrosta admitted "using some speed last week" but denied intravenous drug use. AR 267.  Her toxicology screen on August 14, 2007 was negative.  AR 267.  Since 2007, Decrosta reports smoking marijuana but no other drug use. AR 26.  An intake form for Sausal Creek Clinic dated March 14, 2009 notes that a drug/alcohol screen was "+opiates," but Decrosta denied drug use and claimed she "took GF morphine last night for anxiety." AR 403.  The intake nurse noted Decrosta's strengths as being "patient" and "self advocate[ing]." AR 404.  In March 2009, Decrosta reported being on "court probation for being under the influence of both meth and

morphine." AR 413.  The record is silent about when this drug use occurred or what toxicology screens, if any, were performed as part of Decrosta's probation.  A March 23, 2009 drug screen was positive for marijuana, and a June 9, 2009 drug screen was negative for tested substances.  AR 426.

### 3.  Decrosta's Acceptance Into Abode Services

On May 28, 2009, Decrosta was accepted into Abode Services after screening by Alameda County Behavioral Healthcare Services.  AR 428.   Abode is a program that "serves individuals who have a diagnosis of a serious and persistent mental illness and also have a long history of homelessness." AR 428.    During her June 2009 hearing, Decrosta noted that she was waiting for an opening in the Abode program, which she expected "in six months." AR 32.  No evidence of Decrosta's enrollment date or tenure in this program is in the record.

### 4.  Available Medical Evaluations of Decrosta's Impairments

In early 2007, Decrosta did not keep appointments with either the physician or psychologist appointed by the state to evaluate her.  AR 237.  State agency physician Dr. Barbara Couglin noted in a February 28, 2007 report that Decrosta "failed to cooperate with CE [clinical evaluation] process . . . no further CE's will be scheduled.  Determination will be made with information in file." AR 237.  In a March 7, 2007 report, state agency physician Dr. Jose Santos reported "insufficient evidence" in evaluating Decrosta's medical disposition. AR 238.  By failing to attend these appointments, Decrosta deprived herself of additional documentation to supplement her claims.  As a result, only two reports addressed specifically Plaintiff's medical conditions in connection with her disability claims: one by Decrosta's treating physician, Dr. Naik, and one by agency physician, Dr. Rudnick, who relied on the record in issuing his opinion.

#### i)   Dr. Naik's Evaluation

Based on monthly appointments with Decrosta over the span of 30 months, Decrosta's treating physician, Dr. Ramdas Naik, noted the following "clinical findings" in March 2008: occasional agitation, a lack of insight and judgment, and "poor reality

United States District Court
Northern District of California

4

United States District Court
Northern District of California

orientation." AR 331.  Dr. Naik assessed Decrosta's current GAF at 30 and her highest GAF in the preceding year as 50. AR 331.  He went on to find that Decrosta was "unable to meet competitive standards" in all sixteen "Mental Abilities and Aptitudes Needed To Do Unskilled Work" except for two.  AR 333. He likewise found Decrosta was "unable to meet competitive standards" in all four "Mental Abilities and Aptitudes Needed To Do Semiskilled and Skilled Work" and all five "Mental Abilities and Aptitudes Needed To Do Particular Types of Jobs." AR 334.

Dr. Naik noted that Decrosta does not have "low IQ or reduced intellectual functioning" but found that her medical conditions would necessitate absence from work "more than four days per month." AR 334-35.  Dr. Naik concluded that Decrosta was not a "malingerer" and that her disability was expected to last for at least twelve months. AR 335. These findings were reported in a five-page "Mental Residual Functional Capacity" form, which does not ask for information regarding a patient's substance abuse. AR 331-35. Decrosta's substance abuse, or its relevance to Dr. Naik's findings, is not referenced in the report.

A number of queries in the form are not answered.  For example, Question 10 asks: "Does the psychiatric condition exacerbate your patient's experiences of pain or any other physical symptom?" AR 334.  "Yes" is circled, but the portion of the form that reads "If yes, please explain" is left blank.  AR 334.  Question 15, which states: "Please describe any additional reasons not covered above why your patient would have difficulty working at a regular job on a sustained basis." is left blank.  AR 335.  Question 17 asks : "What is the earliest date the description of symptoms and limitations in this questionnaire applies?  Date: ____  Why this date?  Your patient must be disabled from performing any full-time work or expected to be disabled for at least a year.  Is it possible that her disability will last or be expected to last 12 consecutive months?  Yes   No  Why or why not?" AR 335.  This entire question is unanswered with the exception that "Yes" is circled.  AR 335.

//
//

5

ii)  **Dr. Rudnick's Evaluation**

On December 10, 2007, Dr. Rudnick, a board certified psychiatrist, completed a "Medical Source Statement of Ability to Do Work-Related Activities (Mental)" on Decrosta. AR 324.  As noted above, Decrosta did not keep appointments with state-appointed doctors, and this evaluation was therefore based on the record and not firsthand observations of Decrosta.  Based on his review, which specifically took into account Decrosta's substance abuse, Dr. Rudnick found that Decrosta's impairment affected her ability to "understand, remember, and carry out instructions." AR 324.  He assessed mild to moderate difficulty in specific capabilities in this category.  AR 324.  He also noted mild to moderate difficulty with specific capabilities relating to Decrosta's "ability to interact appropriately with supervisors, co-workers, and the public, as well as to respond to changes in a routine work setting" due to her impairments. AR 325.  He concluded that "sustained attention and concentration are more than mildly affected by symptoms.  However the claimant retains the capacity to attend and concentrate for at least two hour periods and is able to complete a normal work schedule." AR 325.  His assessment "assumes continued abstinence from drugs." AR 325.  Noting Decrosta's symptoms associated with depression, anxiety, and bipolar disorder as well as her "sixteen year history of substance abuse with period [sic] of short term sobriety," Dr. Rudnick observes that "the claimant has a severe mental impairment that does not meet or equal a listing.  The most significant problem historically has been substance abuse."  AR 327.  He ultimately concludes that "the severity of the mental impairment is consistent with the claimant being expected to be able to perform routine work related tasks not involving high stress situations for a standard work schedule." AR 329.

### STANDARD OF REVIEW

This Court's jurisdiction is limited to determining whether the Social Security Administration's denial of benefits is supported by substantial evidence in the administrative record.  See 42 U.S.C. § 405(g).  A district court may overturn a decision to deny benefits only if it is not supported by substantial evidence or if the decision is based on legal error.

United States District Court
Northern District of California

See Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995); Magallenes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).  The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d at 1039. Determinations of credibility, resolution of conflicts in medical testimony and all other ambiguities are to be resolved by the ALJ. See id.; Magallenes, 881 F.2d at 750. The decision of the ALJ will be upheld if the evidence is "susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1040.

## DISCUSSION

A claimant is entitled to disability insurance benefits if she can demonstrate that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which can be expected to result in death or last for a continuous period of not less than 12 months.  42 U.S.C. § 423(d)(1).  The ALJ conducts a five-step sequential inquiry to determine whether a claimant is entitled to benefits. 20 C.F.R. § 416.920.  At the first step, the ALJ considers whether the claimant is currently engaged in substantial gainful activity (i.e., if the plaintiff is currently working); if the claimant is not engaged in substantial gainful activity, the second step asks if the claimant has a severe impairment or combination of impairments (i.e., an impairment that has a significant effect on the claimant's ability to function); if the claimant has a severe impairment, the third step asks if the claimant has a condition which meets or equals the conditions outlined in the Listings of Impairments in Appendix 1 of the Regulations (the "Listings"); if the claimant does not have such a condition, the fourth step assesses the claimant's residual functional capacity and determines whether the claimant is still capable of performing past relevant work; if the claimant is not capable of performing his past relevant work, the fifth and final step asks whether the claimant can perform any other work based on the claimant's residual functional capacity, age, education, and work experience.  Id. §§ 404.1520(b)-404.1520(f)(1).

If the record indicates the claimant suffers drug or alcohol addiction ("DAA"), "a finding of 'disabled' under the five-step inquiry does not automatically qualify a claimant for

United States District Court
Northern District of California

disability benefits." Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007) (quoting Bustamante v. Massanari, 262 F.3d 949, 954 (9th Cir. 2001)). If DAA is a "contributing factor material to the Commissioner's determination that the individual is disabled," then the claimant is not eligible for disability benefits. 42 U.S.C. § 423(d)(2)(C); 20 C.F.R. §§ 404.1535(a), 416.935(a).  In instances where DAA evidence exists but the claimant is found disabled, "the ALJ must conduct a drug and alcoholism analysis ('DAA Analysis') by determining which of the claimant's disabling limitations would remain if the claimant stopped using drugs or alcohol." Parra, 481 F.3d at 747; see also 20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2); Bustamante, 262 F.3d at 954; Ball v. Massanari, 254 F.3d 817, 821 (9th Cir. 2001).  DAA is not a contributing factor material to claimant's disability if, absent DAA, the ALJ finds that claimant would still be disabled by her remaining limitations. Parra, 481 F.3d at 747. Claimant's DAA is material if, absent DAA, claimant's remaining limitations are not disabling, in which case benefits must be denied. Id. The burden rests on the claimant to prove that drug or alcohol abuse is not a contributing factor material to her disability.  Id. at 748; see also Frizzell v. Astrue, 2011 WL 476433 at *3 (N.D. Cal. Feb. 4, 2011) (stating that "the burden of proving a disability would exist in the absence of drug or alcohol abuse is squarely on the plaintiff").

     Here, the ALJ found at step five that Decrosta "would not be disabled if she stopped the substance use" and that Decrosta's residual functional capacity absent drug abuse would allow her to perform "a significant number of jobs in the national economy." AR 15. Decrosta makes three challenges to the ALJ's decision: 1) "whether the ALJ discounted medical opinion without sufficient findings;" 2) "whether the RFC findings were supported by substantial evidence;" and 3) "whether Defendant sustained the burden of proving the existence of jobs at step five." (Dkt. No. 16 at 6-8.)  The Court considers each of these arguments in turn.

### A.    The ALJ's Treatment of Dr. Naik's Medical Opinion

     In evaluating medical opinions, more weight is generally given to the opinion of a treating physician than to that of a non-treating physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996).  A treating physician's opinion need not be accepted, however, "if that

8

United States District Court
Northern District of California

1   opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the

2   record as a whole." Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195

3   (9th Cir.2004); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (stating that

4   "the ALJ need not accept the opinion of any physician, including a treating physician, if that

5   opinion  is brief, conclusory, and inadequately supported by clinical findings").  "The ALJ

6   must either accept the opinions of [claimant's] treating physicians or give specific and

7   legitimate reasons for rejecting them." Embrey v. Bowen, 849 F.2d 418, 422 n.3 (9th Cir.

8   1988).  Plaintiff argues that the ALJ rejected Dr. Naik's findings without "any specific or

9   directly-stated reasons to discount the contents." (Dkt. No. 16 at 7.)  The Court disagrees.

10   The ALJ stated a reason for rejecting Dr. Naik's assessment that Plaintiff is unable to

11   perform unskilled work when she specifically noted that "none of the claimant's treating

12   sources [including Dr. Naik] have provided information about what the claimant's mental

13   limitations might be if she stopped the substance abuse."  AR 12.

14        Plaintiff concedes that Dr. Naik "did not include a substance-related diagnosis" but

15   argues that because Dr. Naik did not mention substance abuse one way or the other, "the ALJ

16   did not find reasons for rejection that were supported by substantial evidence." (Dkt. No. 16.)

17   Again, the Court disagrees. It is Plaintiff's burden to show that her limitations do not stem

18   from her well-documented substance abuse. Given that Dr. Naik's report did not refer to

19   Plaintiff's substance abuse, the ALJ acted properly in relying on other evidence in the record

20   and the opinion of Dr. Rudnick in reaching her conclusion.  It is also important to note that

21   the ALJ did not reject Dr. Naik's conclusions; at step two, the ALJ found Plaintiff disabled,

22   which is consistent with Dr. Naik's findings.  The ALJ went on, however, to analyze

23   Plaintiff's limitations in light of her substance abuse and concluded that Plaintiff's substance

24   abuse was material to her limitations.  As Dr. Naik did not analyze how Plaintiff's substance

25   abuse contributed to her limitations, his opinion is not in conflict with the ALJ's

26   determination.

27        Plaintiff also argues that Dr. Rudnick's opinion "deserves little or no weight,

28   compared to the knowledgeable reports of the treating physician," since Dr. Rudnick did not

9

United States District Court
Northern District of California

examine Plaintiff.  (Dkt. No. 16 at 7.)  It is well-established, however, that the opinion of a physician who did not examine the claimant can constitute substantial evidence if "it is consistent with other independent evidence in the record."  Lester, 81 F.3d at 830–31; see also Thomas, 278 F.3d at 957 (noting that "the opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record"); Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999) (noting that "opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it").  Dr. Rudnick's determination that Plaintiff could perform work absent her substance abuse is the sole medical opinion on this particular point, and the ALJ did not improperly rely on it.  Further, the ALJ also noted additional medical findings that support her conclusion, including medical records from May 31, 2007 in which "claimant's speech, mood, and affect . . . thought pattern/content, cognitive function, orientation, attention, concentration, memory, and knowledge . . . impulse control, insight, and judgment" were all "within normal limits" after claimant "may have briefly stopped drugs." AR 12.

Plaintiff's reply argument that the ALJ made "unreasonable inferences" based on "zero evidence" is unpersuasive.  (Dkt. No. 23 at 3.)  The record is replete with evidence to support the ALJ's findings.  In addition to Dr. Rudnick's medical opinion, various reports note Plaintiff's ability to self-advocate, her leadership skills while in drug treatment, her improved GAF score after drug treatment, and an observation by at least one medical professional, Dr. Lembke, regarding the difficulty in analyzing whether Plaintiff's symptoms were from her mental illness or "substance-induced mood disorder." AR 322.  There is therefore substantial evidence in the record to support the ALJ's finding that "if the claimant stopped the substance use, the claimant would not have an impairment or combination of impairments that meets or medically equals any of the impairments" that would lead to a finding that Plaintiff is disabled. AR 12.

//

10

United States District Court
Northern District of California

**B.      The ALJ's Findings Regarding Decrosta's RFC**

In determining residual functional capacity, "the ALJ must consider whether the aggregate of [Decrosta's] mental and physical impairments may so incapacitate [her] that [s]he is unable to perform available work." Light v. Soc. Sec. Admin., 119 F.3d 789, 793 (9th Cir. 1997).   An ALJ's determination of a claimant's RFC will be affirmed if the ALJ applied the proper legal standard and her decision is supported by substantial evidence.  See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005).

The ALJ found that absent substance abuse, Decrosta would have the RFC "to perform light work as defined in 20 CFR § 416.967 (b) except that she is limited to simple, routine work." AR 13.  Decrosta argues that given her spotty work history and admission into a homeless shelter, the ALJ erroneously "assumed and implicitly found that Plaintiff's RFC allowed for her being able to sustain work, and she would not have trouble keeping jobs." (Dkt. No. 16 at 8.)  The Court rejects that these factors, in and of themselves, invalidate a RFC assessment.  Even if Plaintiff's work record is "evidence of Plaintiff's limitation in ability to sustain work or hold a job" (Dkt. No. 16 at 8), substantial evidence in the record nonetheless supports the ALJ's determination that, in aggregate, Decrosta's mental and physical impairments allow for "light work."  The evidence upon which the ALJ relied included the finding by Dr. Rudnick, a board certified psychiatrist, that "the claimant is not disabled." AR 12.  Further, the ALJ specifically notes that in reaching her determination, she "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." AR 13.

Plaintiff counters that "clear RFC evidence favorable to Plaintiff's claim was ignored without explanation" (Dkt. No. 16 at 8), but the record does not support this allegation either. Plaintiff alleges that "evidence from 2009 showed continuing poor mental status, especially with episodes of mania, continuing homelessness, and lack of coping, while trying to avoid substance abuse.  It showed that Plaintiff continued to be limited enough to be admitted to the Abode residential treatment center . . . This later evidence was mostly unaddressed." Id.

11

The ALJ does not ignore these factors.  The ALJ specifically notes Decrosta's unreliability as well bipolar disorder, "mood swings, panic attacks, and paranoia." AR 14. Plaintiff's argument that admission into Abode, which "serves individuals who have a diagnosis of a serious and persistent mental illness and also have a long history of homelessness," presents new and compelling evidence is unpersuasive. AR 428.  The mental health concerns and homelessness Plaintiff cites are documented in the record and therefore not new evidence unconsidered by the ALJ. AR 406, 14.  Plaintiff does not articulate any other argument regarding how admission into this program bears on her RFC assessment or ability to work. In conclusion, substantial evidence supports the ALJ's determination regarding Decrosta's RFC.

### C.      The ALJ's Application of the Grids to Determine Job Existence

The determination in step five centers on whether the claimant is able to perform existing work in the national economy. Stout v. Commissioner, 454 F.3d 1050, 1052 (9th Cir. 2006); see also 20 C.F.R. § 404.920(a)(4)(v). The burden rests on the defendant to demonstrate the existence of a significant number of jobs in the national economy that could be performed by the claimant. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir.1999). This burden is satisfied through testimony from a vocational expert or reference to the Medical–Vocational Guidelines, which present "a short-hand method for determining the availability and numbers of suitable jobs for a claimant. These tables are commonly known as 'the grids.'" Id. at 1101.

The Medical–Vocational Guidelines ("grids") can be used in place of testimony from a vocational expert only in situations in which "the grids accurately and completely describe the claimant's abilities and limitations." Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988) (internal citation omitted); see also Tackett, 180 F.3d at 1104 (finding that the ALJ committed reversible error in failing to call a vocational expert and relying solely on the grids when claimant suffered from significant non-exertional limitations); Cohoon v. Astrue, 2011 WL 3841568 at *9 (D. Or Aug. 30, 2011) (noting that "when a claimant's nonexertional limitations are sufficiently severe so as to limit the range of work permitted by the claimant's

exertional limitations, the ALJ may not rely on the grids and instead, the testimony of a vocational expert is required"); Hoopai v. Astrue, 499 F.3d 1071, 1076 (9th Cir. 2007) (stating that the "ALJ is required to seek the assistance of a vocational expert when the non-exertional limitations are at a sufficient level of severity such as to make the grids inapplicable to the particular case").   Finally, "the ALJ must set out in the record [her] reasoning and the evidentiary support for [her] interpretation of the medical evidence." Tackett, 180 F.3d at 1102.

Decrosta contests the ALJ's use of the grids framework.  In her Reply Memorandum, Plaintiff asserts that the ALJ improperly relied on the grids given the facts of this case, in which Plaintiff's limitations are at least partly nonexertional and a vocational expert did not participate in the proceedings.  (Dkt. No. 23 at 4.)  See supra at 12-13.  Because Plaintiff did not raise the issue of the ALJ's use of the grids without a vocational expert until her reply, Defendant has not had the opportunity to respond to this argument.  The Court will therefore defer its decision on Plaintiff's challenge to the use of the grids until Defendant has had the opportunity to put forward arguments, if any, supporting the ALJ's use of the grids without calling a vocational expert given the Plaintiff's nonexertional limitations.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Plaintiff's motion for summary judgment in regard to Plaintiff's arguments 1 and 2 (referenced in Dkt. No. 13 as 1 and 3) is DENIED and Defendant's cross motion for summary judgment in regard to Plaintiff's arguments 1 and 2 (referenced in Dkt. No. 19 as 1 and 3) is GRANTED. The Court defers decision on both summary judgment motions regarding Plaintiff's grids argument pending further briefing by Defendant.  Defendant shall file any such argument on or before December 12, 2011.  Plaintiff shall file a reply, if any, on or before December 23, 2011.  The parties may stipulate to an alternative briefing schedule if needed.

**IT IS SO ORDERED.**

Dated:  November 29, 2011

_____
JACQUELINE SCOTT CORLEY
UNITED STATES MAGISTRATE JUDGE

United States District Court
Northern District of California

13